IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                    Cr. No. 01-1269 JP

JEFFERY SAUERBRY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

On March 5, 2003 Defendant filed a Motion to Dismiss the Indictment (Doc. No. 66). The indictment charges Defendant with two counts of possessing a firearm after Defendant had been convicted of a crime punishable by more than one year in prison.  18 U.S.C. § 922(g)(1). Defendant argues that the indictment should be dismissed because Plaintiff failed to preserve as evidence a fanny pack and a pair of denim jeans that Defendant could use to prove his innocence. According to Defendant, "without this crucial evidence [Defendant] will be denied his Fifth Amendment right to due process of law."  Doc. No. 66 at 1.  Having reviewed the record and the relevant law, the Court concludes that Defendant's Motion should be denied.

**FACTUAL BACKGROUND**

The following facts appear to be undisputed.  On August 16, 2000 Defendant stole his stepbrother's 1996 Chevrolet Blazer in Tucson, Arizona.  Three days later, on August 19, 2000, Defendant checked into the Mimbres Memorial Hospital in Deming, New Mexico with severe burns on his hands, arms, and legs.  Defendants injuries were so extensive that he had to be transported to the University of New Mexico Hospital (UNMH) in Albuquerque for treatment.

Before leaving the Deming hospital, Defendant asked a security guard to retrieve a fanny pack from the Chevrolet Blazer.  Defendant provided the security guard the key to the locked Chevrolet Blazer so that the security guard could fetch the fanny pack.  Defendant brought the pack with him to UNMH.

At UNMH Victoria Chavez inventoried the contents of the fanny pack and found a .357 Magnum revolver inside it.  Ms. Chavez gave the firearm to a UNM police officer for safekeeping while Defendant remained at UNMH.  When Defendant was recovering in the hospital, officials learned that the state of Missouri had issued a warrant for his arrest.  When UNMH released Defendant on August 28, 2000, the fanny pack and all of its contents were returned to him.

On August 25, 2000, before Defendant was released from UNMH, the Deming Police Department obtained a search warrant for the Blazer.  The police were investigating a homicide that had occurred in Independence, Missouri, and believed that evidence of that crime was inside the Chevrolet Blazer.  During the search Detective Beougher found a pair of denim jeans on the front passenger seat.  In the left front pocket of the jeans was a chrome plated .25 caliber semi-automatic handgun.  Detective Beougher tagged the handgun into evidence.  However, the Chevrolet Blazer and the things inside it, including the jeans, were returned to Defendant's stepbrother in the fall of 2001.

**LEGAL ANALYSIS**

The Supreme Court has held that constitutional due process imposes a limited duty on the government to preserve evidence that exculpates a criminal defendant.[1]  In this circuit, however, the test for determining whether law enforcement officials have breached that duty depends on the quality of the evidence in dispute.  *U.S. v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994).  If the exculpatory value of evidence was apparent before it was discarded, lost, or destroyed, then the test articulated in *Trombetta* applies.  *Id*.  Under *Trombetta*, dismissal may be considered if Defendant "would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489.  If a defendant claims simply that "potentially useful evidence" is no longer available, then the standard of *Youngblood* governs and dismissal may be an option when the police misplaced or destroyed evidence in bad faith.  *Id*.

Defendant contends that the *Trombetta* standard should apply since the jeans and fanny pack "would play a significant role in Mr. Sauerbry's defense."  Doc. No. 66 at 3.  However, Defendant has not shown, as required under *Trombetta*, that the exculpatory value of the fanny pack was apparent to anyone in August of 2000.  Defendant has not argued that anybody knew, or reasonably should have known, that Defendant even faced criminal exposure for possessing the weapon while he was in the hospital.  Whatever duty the due process clause imparts, it does not impose "on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."  *Youngblood*,

---

[1] Both of the Supreme Court cases discussing this duty, *California v. Trombetta*, 467 U.S. 479 (1984) and *Arizona v. Youngblood*, 488 U.S. 51 (1988), address the due process clause of the Fourteenth Amendment.  The parties have assumed, and so will the Court, that the legal standards articulated in those cases apply with full force to the due process clause of the Fifth Amendment.

488 U.S. at 58.  Quite simply, Defendant has not shown that the charge here, or more importantly the need to defend against it, was on anyone's mind in August 28 of 2000.[2]

Similarly, Defendant has not shown that it was apparent to the police officers investigating Defendant's case that the jeans inside the Chevrolet Blazer had any exculpatory value before the police returned the Blazer, with the jeans inside it, to Defendant's stepbrother in the fall of 2001.  Defendant's stepbrother claims to have discarded the jeans.  Doc. No. 71 at 14.  Although Defendant now claims that the jeans belonged to his stepbrother, Defendant has not attempted to shown how or why the police officers investigating the case should have known this.[3]

Defendant has argued, in a conclusory fashion, that "the containers of the firearms, be it a backpack or jeans, is the only available evidence to establish constructive possession."[4]  Doc. No. 66 at 2.  Yet reasonably available means exist for Defendant to present to a jury comparable evidence concerning ownership of the fanny pack and the jeans.  Detective Beougher photographed the jeans on the front seat of the Chevrolet Blazer.  The hospital documented the contents of the fanny pack.  Doc. No. 71, Ex. 1.  Defendant could call as a witness anyone who handled the evidence to testify about the characteristics or the contents of the fanny pack or the

---

[2] Defendant's criminal complaint and indictment were not filed until September of 2001.

[3] When the Deming police searched the Chevrolet Blazer, they were looking for evidence related to a homicide.  No showing has been made that the police were remotely aware that Defendant could be charged as a felon in possession of a firearm.  Although the Deming police impounded the Chevrolet Blazer and its contents from August 2000 until the fall of 2001, Defendant made no attempt to inform the police about or otherwise secure the potentially exculpatory jeans inside the Blazer.

[4] The probative value of who owned the fanny pack or jeans is undermined significantly because Defendant had exclusive possession of them.  When a criminal defendant has exclusive possession of a container, knowledge and control of a firearm hidden therein can be inferred.  *U.S. v. Gorman*, 312 F.3d 1159, 1164 (10th Cir. 2002).

jeans.[5]  Hence Defendant can present evidence which will allow Defendant to argue that the fanny pack and jeans belonged to his stepbrother.

Although the fanny pack and jeans were potentially useful evidence under *Youngblood*, Defendant has not argued that law enforcement officers discarded the evidence in bad-faith.  The decision not to argue *Youngblood* was a wise one since bad-faith cannot be distilled from the facts as alleged.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss the Indictment (Doc. No. 66) is DENIED.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[5]  It is understandable why Defendant would prefer to have the physical evidence rather than call his stepbrother to testify.  Defendant's stepbrother claims that Defendant owned the jeans and both of the weapons charged in the indictment.  Doc. No. 71 at 4.